**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**4884 HIGHWAY 1, LLC**                                   **CIVIL ACTION**

**VERSUS**                                               **NO. 24-2810**

**TOBACCO PLUS, INC. ET AL.**                            **SECTION "O"**

<u>**ORDER AND REASONS**</u>

Before the Court in this breach of contract and guarantor action is the Federal Rule of Civil Procedure 12(b)(6) motion[1] of Defendants Tobacco Plus, Inc. and Shop Rite Inc. to dismiss Plaintiff 4884 Highway 1, LLC's claims for breach of the parties' lease agreement. Plaintiff opposes the motion. For the following reasons, the motion is **DENIED**.

### I.    BACKGROUND

This breach of contract action arises from Plaintiff 4884 Highway 1, LLC's claim that Defendant Tobacco Plus, Inc., and Defendant Shop Rite as guarantor, have breached their obligations owed under the operative lease between the parties. Because this case comes to the Court on Defendants' Rule 12(b)(6) motion to dismiss, the facts that follow are drawn from the well-pleaded allegations of Defendants' complaint and attached exhibits, which are incorporated by reference.[2] *See generally Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 190 (5th Cir. 2009).

---

[1] ECF No. 12.

[2] The Lease agreement and its amendments are considered incorporated into the pleadings because Plaintiff attached the documents to its complaint, Plaintiff relies on them in its complaint, and they are central to Plaintiff's claims. *See Ware v. Irving Place Assocs., L.P.*, 2025 WL 3022311, at *2 n.6 (5th Cir. Oct. 29, 2025).

On June 17, 1988, Wilbur Marvin, landlord, and Shop Rite, lessee, entered into a Shopping Center Lease (the "Lease").[3] The Lease provided for a fifteen-year initial term that automatically renewed for three additional terms of five years.[4] On June 17, 2009, Shop Rite assigned the Lease to Tobacco Plus and was added as a guarantor of the Lease.[5] On December 5, 2014, Mathews, LA., Commercial Properties Development Company, L.L.C. ("CPDC"), successor to Wilbur Marvin, sold the leased premises and assigned the Lease to Plaintiff.[6]

The Lease called for both a fixed rent payment by the lessee and a "percentage rent" payment of 3% of the lessee's gross annual sales volume (excluding gasoline sales).[7] The lessee was also required to submit to the lessor an annual sales report showing gross sales receipts for the year.[8]

On September 23, 2009, CPDC and Tobacco Plus entered into an amendment ("Amendment 1") that adjusted the fixed rent amount. It also removed, for five years, the Lease's requirement that Tobacco Plus pay a percentage rent of its annual sales. But it maintained the requirement that Tobacco Plus provide an annual sales report showing its annual gross sales volume.[9]

Several years later, on November 5, 2013, CPDC and Tobacco Plus entered into the "Letter Agreement," which further modified the terms of the Lease. Relevant

---

[3] ECF No. 1 ¶ 6.
[4] *Id.* ¶ 7.
[5] *Id.* ¶ 9.
[6] *Id.* ¶ 14.
[7] ECF No. 1-1 at 2 (Exhibit A – Lease). The Lease provided that the lessee would pay to the lessor $0.01 per gallon of annual gross sales volume of gasoline sales. *Id.*
[8] *Id.*
[9] ECF No. 1-3 (Ex. C – Amendment 1).

here, the Letter Agreement reinstated the requirement that Tobacco Plus pay an "additional rent (overage) based upon 3% of annual gross sales volume excluding only gasoline sale[.]" The Letter Agreement maintained the requirement that Tobacco Plus provide an annual sales report with gross receipts during the prior lease year.[10]

As noted, in 2014 CPDC sold and assigned the lease to Plaintiff.[11] In May 2019, Plaintiff and Tobacco Plus entered into an "Amendment to Lease," which renewed Tobacco Plus's Lease and incorporated "all provisions included in the prior renewal dated November 5, 2013[.]"[12]

Despite the terms of the November 5, 2013 Letter Agreement, Tobacco Plus never provided Plaintiff with its annual sales reports showing its gross receipts. Nor did it pay Plaintiff the percentage rent of its annual sales.[13] In 2023, Plaintiff and Tobacco Plus began renegotiating the terms of the Lease. In connection with those renegotiations, Plaintiff demanded that Tobacco Plus provide its gross sales receipts to allow Plaintiff to calculate past due rent owed.[14]

On August 4, 2023, Tobacco Plus provided Plaintiff with its gross receipts from 2014 through 2022. From these gross sales receipts, Plaintiff calculated that it is owed approximately $270,000.00 in additional rent from Tobacco Plus for fiscal years 2014 through 2022. Further, despite multiple requests from Plaintiff, Tobacco Plus failed to provide gross sales receipts for fiscal years 2023 and 2024. [15]

---

[10] ECF No. 1 ¶ 13; ECF No. 1-4 (Ex. D – Letter Agreement).
[11] ECF No. 1 ¶ 14.
[12] *Id.* ¶ 16; ECF No. 1-7 (Ex. G – Amendment).
[13] ECF No. 1 ¶ 18.
[14] ECF No. 1 ¶¶ 19-20.
[15] *Id.* ¶¶ 21-23.

Plaintiff now seeks reimbursement for the $270,000 it is allegedly owed in past due rent. Plaintiff brings two claims: (1) breach of contract for Tobacco Plus's breach of the lease agreement; and (2) an action against Shop Rite as guarantor.

Tobacco Plus and Shop Rite move to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim.[16] Plaintiff opposes.[17]

## II.    LEGAL STANDARD

Rule 8(a)(2) requires that any "pleading that states a claim for relief" contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also* FED. R. CIV. P. 7(a) (defining "[p]leadings" to include "third-party complaint[s]"). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[16] ECF No. 12.
[17] ECF No. 14.

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.    ANALYSIS

Defendants do not dispute that Plaintiff has adequately pled the elements of a claim for breach of contract under Louisiana law.[18] Instead, Defendants contend that Plaintiff's claim fails as a matter of law because the parties modified the written Lease agreement by course of conduct. According to Defendants, since 2014 the parties have been operating under the terms of the September 2009 Amendment—which does not require a percentage of sales rent payment—and not the November 2013 Letter Agreement, which does require a percentage of sales rent payment. In support, Defendants point to the fact that Plaintiff has not taken issue with either their failure to pay the percentage rent payment or their failure to provide gross annual sales receipts for nearly two decades.

It is true that under Louisiana law, "written contracts may be modified by oral contracts and the conduct of the parties, even when the written contract contains a

---

[18] Both agree Louisiana law applies to the Lease.

provision that change orders must be in writing." *Aqua Pool Renovations, Inc. v. Paradise Manor Cmty. Club, Inc.*, 04-119 (La. App. 5 Cir. 7/27/04), 880 So. 2d 875, 880. It is also true that "[m]odification of a written agreement can be presumed by silence, inaction, or implication." *Id.* But whether an agreement has modified the written contract is a question of fact. *Alonso v. Westcoast Corp.*, 920 F.3d 878, 886 (5th Cir. 2019) (citing *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, 501, *writ denied,* 2014-2304 (La. 1/23/15), 159 So. 3d 1058). The party asserting modification of an obligation must prove "by a preponderance of the evidence facts or acts giving rise to the modification." *Driver Pipeline*, 150 So. 3d at 501. And factual disputes cannot be resolved on a motion to dismiss. *See Ottemann v. Knights of Columbus*, 36 F.4th 600, 608–09 (5th Cir. 2022) ("[R]esolving this dispute precipitates a question of fact which cannot be resolved as a matter of law on a motion to dismiss."). Therefore, in this posture, the Court cannot resolve the question of whether the parties modified by their conduct the Lease and its amendments.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendants' Rule 12(b)(6) motion[19] to dismiss Plaintiff's complaint is **DENIED.**

---

[19] ECF No. 12.

New Orleans, Louisiana, this 30th day of March, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE